UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERRELL BAKER, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) Case no. 4:18-CV-1535 PLC |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| | ) |
| DEFENDANT. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Sherrell Baker seeks review of the decision by Defendant Social Security Commissioner Andrew Saul denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the case is reversed and remanded.

**I.     Background and Procedural History**

In April 2015, Plaintiff, then forty-one years old, filed an application for DIB alleging that she became disabled on April 1, 2015 as a result of multiple sclerosis (MS), vertigo, and depression. (Tr. 61-68) The Social Security Administration (SSA) denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 70-76)

In October 2017, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 29-60) In a decision dated January 2018, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 1, 2015, through the

---

[1] At the time this case was filed Nancy A. Berryhill was the Deputy Commissioner of Social Security.

1

date of this decision." (Tr. 15-23) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.   Evidence before the ALJ

Plaintiff testified that she was forty-three years old and had an associate degree in business administration. (Tr. 33) Plaintiff worked for twenty-one years in the copy division of a company that provided photocopy service for large businesses. (Tr. 34, 50) Plaintiff explained that she began her career "making copies," later became a supervisor, and "[t]hen towards the end they put me back to administration because I wasn't able to…perform all the duties…on the floor, so they tried to find something else for me to do." (Tr. 34) In her administrative position, Plaintiff performed "general office work," but due to her physical condition, "was missing a lot of work, and they just eventually phased me out of my position."[2] (Id.)

When the ALJ asked Plaintiff what conditions prevented her from working, Plaintiff answered: "A lot of pain in the joints, fatigue, that's throughout the week. A lot of times I'm down for three or four days because I can't get up from joint pain, just being tired, just anything will wear me out…." (Tr. 35) Plaintiff explained that her pain was located in "the knees, the hips, the lower back, my left side…upper left arm…and my hands are really, really weak like

---

[2] Plaintiff later described her former employer's efforts to accommodate her:

> I was no longer like in charge of running the floor because that was a lot of heavy lifting and stuff like that, so they put me on ordering supplies and things. The thing was [sic] that I was getting behind, really behind, not remembering what needed to be done….

(Tr. 50-51)

2

really, really bad….the joints are always locking up on me." (Id.)  Plaintiff also had "issues with [her] bladder."[3]  (Tr. 36)

The ALJ asked Plaintiff to describe the effects of her Meniere's Disease, and she stated:  "I always tell people it makes me feel drunk, like I've been drinking or like real light head [sic] feeling where I can't lift my head up or…I'm just weak like constantly for the whole day…."  (Tr. 44-45)  Plaintiff explained that the condition also affected her balance and the spinning sensation made her "stomach hurt really bad…."  (Tr. 45)  These episodes occurred "two or three times a month and it usually kicks in more so on car rides."  (Id.)

At the time of the hearing, Plaintiff was taking the following medications: methotrexate, folic acid, Vesicare, Cosentyx, Rebif, Mobic, Lexapro, Bistata [sic], Dexilant, albuterol, triamterene, gabapentin, and meclizine.  (Tr. 36)  Plaintiff explained that the Cosentyx was an injection she received once a month for back pain from ankylosing spondylitis and rheumatoid arthritis.  (Id.)  Plaintiff administered her Rebif injections for MS three times per week.  (Tr. 37)

Plaintiff testified that she lived with her husband and ten-year-old son.  (Tr. 38)  When the ALJ asked Plaintiff to describe a typical day, Plaintiff stated:

> Usually I get up in the morning, but it's not really getting up, I just kind of lay there just kind of listening to [son] getting ready for school.  And then I'll just lay there until either, you know, I start loosening up and then I'll get up.  I spend pretty much of my day not doing much of anything because once I start either – I mean I'm just like wore out from just moving around and just in pain basically.  It's just a lot of fatigue.  So pretty much my day is spent – half the day is spent in the bed until [son] comes home.

---

[3] In regard to her bladder problems, Plaintiff explained that a "quick" bladder meant "if I have to use the restroom I have to go right then.  I find myself like, losing, you know, well let's just say going to the bathroom on myself a couple of times…It's almost every day."  (Tr. 45-46)

3

(Tr. 38) Plaintiff "sometimes" watched television but no longer read because "I'm not remembering the storyline so it's almost reading it over and over again, so I just stopped doing it." (Tr. 39) Plaintiff prepared simple meals such as sandwiches and cereal but did not cook because standing was painful. (Tr. 40) Plaintiff's husband cooked, shopped, and did the laundry. (Id.) Plaintiff stated that she "tr[ied] to attend" her son's football games but did not drive "if I can help it." (Tr. 41)

Plaintiff testified that she was able to walk a block but "not well…[l]ike I can walk it, but by the time I'm done it's time to go home….that's my whole day." (Tr. 43) Plaintiff was able to stand for "a few minutes," and she could not sit for "long periods." (Id.)

A vocational expert also testified at the hearing. The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and experience, able to work at the sedentary level with the following limitations:

> …can occasionally handle, finger and feel; can do occasional overhead reaching; frequent lateral reaching; should not ever be required to climb ramps and stairs, or ladders, ropes or scaffolds; who can occasionally balance, stoop and crouch, but never kneel or crawl; should not be exposed to unprotected heights or hazardous machinery; and should be exposed to no more than occasional vibration.

(Tr. 55) The vocational expert stated that such an individual would be able to perform Plaintiff's past work as an administrative assistant, as well as the positions of telephone answering service operator, information clerk, and appointment clerk. (Tr. 56-57) However, the vocational expert testified that, if the individual "had to take two unscheduled breaks in addition to the normally scheduled breaks," she could not maintain employment. (Tr. 57) Nor would there be jobs for this individual if she had to elevate her legs "[a]t chair height…as a regular position." (Tr. 58)

With respect to Plaintiff's medical treatment records, the Court adopts the facts provided by Plaintiff in her statement of material facts and admitted by the Commissioner, as well as the facts provided by the Commissioner in his statement of additional facts. [ECF Nos. 19, 24-1, 24-2] The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

### III. Standard for Determining Disability under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. 42 U.S.C. § 423(a)(1); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 42 U.S.C. § 423(d)(1)(A); See also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; see also McCoy v. Astrue, 648 F.3d 605, 511 (8th Cir. 2011). Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P,

Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. Id.; Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012).

**IV.    The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since April 1, 2015; and (2) had the severe impairments of MS, rheumatoid arthritis, Meniere's disease, obesity, osteoarthritis, and ankylosing spondylitis. (Tr. 17) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

The ALJ reviewed Plaintiff's testimony and medical records and determined that, while her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the objective medical evidence, the observations of her treating doctors, and other evidence in the record[.]" (Tr. 20) The ALJ also reviewed the medical opinions of Dr. Bilal, Plaintiff's rheumatologist, and Dr. Herzog, who

treated Plaintiff's Meniere's disease, and determined they "cannot be given significant weight." (Tr. 21)

The ALJ determined that Plaintiff had the RFC to perform sedentary work with the following limitations:

> She can perform occasional overhead reaching, frequent lateral reaching, and frequent handling, fingering, and feeling. She cannot climb ramps & stairs, or ladders, ropes, or scaffolds. She can occasionally balance, stoop, and crouch, but should engage in no kneeling or crawling. She should be exposed to no unprotected heights or hazardous machinery, no more than occasional vibration.

(Tr. 19) At step four of the sequential evaluation, the ALJ found that Plaintiff was able to perform her past relevant work as a photocopy machine operator. (Tr. 21) Additionally, the ALJ found that Plaintiff was capable of performing other jobs that existed in significant numbers in the national economy, such as telephone answering service worker, information clerk, and appointment clerk. (Tr. 22) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 22-23)

## V. Discussion

Plaintiff claims the ALJ erred in determining her RFC because: (1) the RFC was not supported by substantial evidence and lacked medical support; and (2) the ALJ improperly discounted the medical opinions of Plaintiff's treating physicians. [ECF No. 18] Additionally, Plaintiff contends that the ALJ failed to properly assess her credibility. [Id.] In response, the Commissioner asserts that the ALJ properly evaluated the record and determined her impairments were not disabling. [ECF No. 24]

### A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B. RFC

Plaintiff claims the ALJ erred in determining that she had the RFC to perform sedentary work because "it was not supported by substantial evidence and lacks any medical support or rationale for the findings therein." [ECF No. 18 at 2-3] Plaintiff further argues that because the ALJ discredited her rheumatologist's opinion, which was the only medical opinion in the record addressing Plaintiff's physical ability to perform work-related activities, the ALJ "should have obtained evidence addressing her capabilities…." [ECF No. 18 at 4] The Commissioner counters that: (1) the ALJ properly formulated and explained Plaintiff's RFC; and (2) "the record does not point to any greater limitations." [ECF No. 24 at 8]

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [her] limitations." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). See also Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

Plaintiff first saw rheumatologist Dr. Bilal for "management of polyarthralgia and positive ANA" in December 2015. (Tr. 530) Plaintiff complained of "pain in bilateral hand Lt > Rt, left shoulder along with swelling of hands, wrists, bilateral knees, ankles, and feet. Also has lower back pain with no radiation. Has h/o back pain since teens." (Id.) Her review of symptoms was positive for Raynaud's, nodules, difficulty swallowing, swelling, and depression. (Id.) On physical examination, Dr. Bilal noted limited range of motion of Plaintiff's bilateral knees and hips. (Tr. 532) Dr. Bilal assessed "diffuse polyarthralgia mostly involving bilateral hands, bilateral wrists, shoulders" with elevated ESR and ANA. (Tr. 533)

9

X-rays of Plaintiff's sacroiliac joints revealed mild degenerative narrowing left sacroiliac joint greater than right, and an MRI of the sacrum revealed mild facet arthropathy on the right at L4-5. (Tr. 737-38)

At Plaintiff's next appointment with Dr. Bilal in January 2016, she complained of continued polyarthralgia and rated her pain as seven on a ten-point scale. (Tr. 555) On examination, Dr. Bilal noted: swollen and tender joints and limited range of motion of bilateral knee with crepitus; limited range of motion of the back; and limited external rotation of the hip. (Tr. 556) She prescribed prednisone and ordered knee x-rays, which showed "mild bilateral medial and patellofemoral joint space narrowing with small osteophytes consistent with mild osteoarthritis." (Tr. 738)

Plaintiff called Dr. Bilal's office in February 2016, to report that the prednisone had helped her knees, but she continued to suffer joint pain. (Tr. 569) Dr. Bilal increased Plaintiff's prednisone and prescribed methotrexate and folic acid. (Id.) In March, Dr. Bilal noted that Plaintiff's lab results showed persistent elevation of ESR and CRP, which was "consistent with persistent inflammation." (Tr. 570, 580)

When Plaintiff returned to Dr. Bilal's office in April 2016, she reported "some minimal improvement in the form of LS pain and swelling of the knees....Still has diffuse polyarthralgia mostly involving bilateral hands, knees, ankles and feet." (Tr. 580) Dr. Bilal observed that Plaintiff had limited range of motion in her knees and hips and swelling of her wrists.[4] (Tr. 581) The next month, Plaintiff reported "[s]tiffness lasting 20 minutes with inactivity of any kind." (Tr. 617) On physical examination, Dr. Bilal noted "[l]imited range [of] motion on

---

[4] Dr. Bilal instructed Plaintiff to "continue with pain medications as needed" and noted that, due to Plaintiff's history of MS, she was "not a candidate for TNF biologics." (Tr. 583)

10

bilateral knees with crepitus, limited external rotation of bilateral hips, we[ak] grip." (Tr. 618) Dr. Bilal previously prescribed Orencia, and Plaintiff had received two injections. (Tr. 617)

Dr. Bilal completed an arthritis RFC questionnaire in May 2016. (Tr. 345-49) Dr. Bilal diagnosed Plaintiff with rheumatoid arthritis based on her elevated CRP and positive ANA. (Tr. 345) Dr. Bilal noted the following objective signs: reduced range of motion; joint warmth, deformity, and instability; reduced grip strength; impaired sleep and appetite; weight change; tenderness; crepitus; swelling; muscle weakness; abnormal gait; and positive straight leg raise. (Id.) Dr. Bilal located Plaintiff's pain in her bilateral cervical spine, thoracic spine, shoulders, arms, hands/fingers, hips, legs, knees, ankles, and feet. (Tr. 346)

In regard to Plaintiff's ability to work, Dr. Bilal opined that Plaintiff's symptoms would interfere with her attention and concentration frequently, or "34% to 66% of an 8-hour working day." (Tr. 346-47) Dr. Bilal stated that Plaintiff could walk only a "few steps" without rest or severe pain. (Tr. 347) She estimated that Plaintiff could sit or stand fifteen minutes at a time and for less than two hours total in an eight-hour workday. (Id.) She also stated that Plaintiff would: require frequent unscheduled breaks, need to elevate her legs on a chair while sitting, and be absent from work more than four days per month. (Tr. 348-49) Finally, Dr. Bilal noted that Plaintiff had significant limitations with reaching, handling, and fingering, such that she could perform those functions for only one percent of the day. (Tr. 348-49)

Plaintiff returned to Dr. Bilal's office in November 2016 with complaints of diffuse polyarthalgia, "morning stiffness that is constant," and pain "mostly located in the hands, knees and feet." (Tr. 639) She reported that she was not taking her Orencia injections because "she is on injection for [MS] and it is very hard to take multiple injections." (Id.) Dr. Bilal observed that Plaintiff was "currently with high disease activity" and she had limited range of motion in

11

bilateral knees with crepitus, limited external rotation of bilateral hips, and weak grip. (Tr. 639, 641) Dr. Bilal wrote that she would change the Orencia from an injection to an infusion "to improve the compliance."[5] (Tr. 641)

At Plaintiff's next appointment with Dr. Bilal in February 2017, Dr. Bilal observed the same diffuse polyarthralgia, constant morning stiffness, limited ranges of motion, and weak grip. (Tr. 690) Dr. Bilal diagnosed Plaintiff with ankylosing spondylitis, and she prescribed Concentyx. (Tr. 693) In May 2017, Dr. Bilal noted persistent joint pain and swelling, with pain and constant stiffness in her back. (Tr. 762) Plaintiff was noncompliant with Concentyx, and had taken only one injection in the past three months. (Id.) Plaintiff rated her pain as a nine and complained of pain in the "left shoulder with nodule." (Tr. 763, 765) Plaintiff's labs showed elevated ESR and CRP and low vitamin D. (Tr. 766, 771)

In August 2017, Plaintiff informed Dr. Bilal that she was recently diagnosed with severe depression, and she continued to complain of persistent joint pain and swelling and constant stiffness in her back. (Tr. 798) Plaintiff was noncompliant with her Concentyx, methotrexate, and folic acid (Id.) Plaintiff's physical examination was unchanged, and she rated her pain as an eight. (Tr. 800) Later that month, she received an injection in her left shoulder for subacromial bursitis of the shoulder joint. (Tr. 827)

In discussing Plaintiff's rheumatoid arthritis and ankylosing spondylitis, the ALJ observed that medications such as steroids, Orencia, methotrexate and Cosentyx "all seemed to help improve [Plaintiff's] symptoms" but Plaintiff "neglected to take the medication." (Tr. 20) The ALJ also stated that Dr. Bilal "typically observed [Plaintiff] to have a normal gait, and some restricted range of motion in her knees, and hips" but "consistently did not observe a

---

[5] In February 2017, Dr. Bilal noted that Plaintiff's insurance denied the Orencia infusions. (Tr. 690)

restriction in [Plaintiff's] ability to use her hands." (Id.) Finally, the ALJ observed that Plaintiff's x-rays and MRIs "showed only mild degenerative changes." (Id.)

The ALJ reviewed Dr. Bilal's RFC questionnaire and concluded that Dr. Bilal's opinion "was not consistent with the mild abnormalities she reported in her treatment notes." (Tr. 21) The ALJ opined that a person with mild abnormalities would be able to work an eight-hour day and therefore concluded that Dr. Bilal's opinion "cannot be given significant weight." (Id.) Having discredited Dr. Bilal's opinion, the ALJ found that Plaintiff was capable of performing a limited range of sedentary work with "occasional overhead reaching," "frequent lateral reaching," and "frequent handling, fingering, and feeling." (Tr. 19)

"Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." SSR 96-9P, 1996 WL 374185, at *8. In arriving at the conclusion that Plaintiff was capable of frequent reaching, handling, fingering, and feeling, the ALJ overlooked significant evidence of Plaintiff's impairments to her hands and arms. For example, Plaintiff complained to Dr. Bilal about pain and/or polyarthralgia in her hands in April, May, and November 2016 and February and August 2017. In her physical examinations, Dr. Bilal noted Plaintiff's weak grip in April and November 2016 and February 2017. In August 2017, Dr. Bilal administered an injection to Plaintiff's left shoulder for subacromial bursitis. Dr. Bilal's treatment notes are consistent with her opinion that Plaintiff had "significant" limitations in reaching, handling, and fingering.

Furthermore, sedentary work requires the ability to "remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9P, 1996 WL 374185, at *7. No medical source opined that Plaintiff could sit for six hours in an eight-hour workday. See

Loveland v. Astrue, 734 F.Supp.2d 857, 868 (E.D. Mo. 2010). In fact, the only evidence in the record of Plaintiff's ability to sit was: (1) Dr. Bilal's opinion that Plaintiff could sit fifteen minutes at a time; and (2) Plaintiff's testimony that she could not sit for "long periods." On the administrative record in this case, the only way the ALJ could have determined that Plaintiff was able to sit for six hours per day was to "draw [her] own inferences from medical reports," which an ALJ may not do under the Social Security Act.[6] See Krewinghaus v. Berryhill, No. 4:18-CV-377 DNN, 2019 WL 1015062, at *4 (E.D. Mo. Mar. 4, 2019) (citing Nevland, 204 F.3d at 858).

The Commissioner correctly asserts that the ALJ "is permitted to issue a decision without obtaining additional medical evidence, so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). In this case, however, the record contained no medical evidence supporting the ALJ's determination that Plaintiff had the RFC to perform a limited range of sedentary work. By relying on her own interpretation of Plaintiff's treatment notes, rather than seeking clarification from Plaintiff's medical providers, the ALJ failed to satisfy her duty to fully and fairly develop the record. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (ALJ has independent duty to develop the medical record); Jackson v. Colvin, No. 4:13-CV-233-NAB, 2013 WL 6571600, at *2 (E.D. Mo. Dec. 13, 2013) (ALJ had duty to develop record where plaintiff was treated for MS and alleged symptoms consistent with diagnosis). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a

---

[6] The ALJ also discounted, without explanation, Dr. Bilal's opinion that Plaintiff would require frequent unscheduled breaks and the ability to elevate her legs while sitting. These limitations are significant because, according to the vocational expert's testimony, they would preclude full-time employment.

14

claimant's impairment on [her] ability to work." Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012).

## I. Conclusion

For the reasons set forth above, the court finds that the Commissioner's decision was not supported by substantial evidence.[7] Accordingly,

**IT IS HEREBY ORDERED** that pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

An order of remand shall accompany this memorandum and order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE
JUDGE

Dated this 21st day of February, 2020

---

[7] Because substantial evidence did not support the ALJ's RFC determination, the Court addresses only that issue. See Western v. Berryhill, No. 1:16-cv-49 JAR, 2017 WL 1407118, at *3 (E.D. Mo. Apr. 20, 2017).